Argued and submitted July 14, reversed and remanded October 25, reconsideration denied December 15, 1989, petition for review allowed February 6, 1990 (309 Or 333)
See later issue Oregon Reports

## HONEYWELL et al,
*Respondents,*

*v.*

## STERLING FURNITURE CO.,
dba M. Jacobs Fine Furniture,
*Appellant.*

(16-87-09481; CA A50296)

781 P2d 379

Bruce C. Moore, Eugene, argued the cause for appellant. With him on the brief was Bruce C. Moore, P.C., Eugene.

Bob Scott, Albany, argued the cause for respondents. On the brief were Gary E. Norman and Scott & Norman, P.C., Albany.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals the entry of a judgment awarding plaintiffs $1,795 in compensatory damages, $20,000 in punitive damages and $10,251 in attorney fees in their action for conversion and unlawful trade practices. ORS 646.605 *et seq.* We reverse.

In 1979, plaintiffs purchased furniture from defendant on a lay-a-way purchase plan. Because of subsequent health problems and job losses, plaintiffs were unable to make regular monthly payments, and they did not pay off the balance until August, 1987. The furniture delivered by defendant at that time was not the furniture that plaintiffs had laid away in 1979. The testimony of former employes of defendant was to the effect that defendant knew that part of plaintiffs' furniture was gone and had been gone for a number of years. The jury returned a special verdict that defendant had converted plaintiffs' furniture and had committed an unlawful trade practice and included an award of punitive damages.

Defendant assigns as error the trial court's instruction to the jury that

> "[i]f punitive damages are awarded by you, Oregon Law requires that they be distributed as follows: First, the attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party; secondly, one-half of the remainder shall be paid to the prevailing party; third, the other half of the remainder shall be paid to the Criminal Injury [sic] Compensation Account to be used for the purposes set forth in the law."

The instruction is based on ORS 18.540,[1] which was enacted in 1987 as part of the so-called Oregon Tort Reform

---

[1] ORS 18.540 provides:

"The punitive damage portion of an award shall be distributed as follows:

"(1) The attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party.

"(2) One-half of the remainder shall be paid to the prevailing party.

"(3) One-half of the remainder shall be paid to the Criminal Injuries Compensation Account to be used for the purposes set forth in ORS chapter 147. However, if the prevailing party is a public entity, the amount otherwise payable to the Criminal Injuries Compensation Account shall be paid to the general fund of the public entity."

Act.[2] Plaintiffs argue that the instruction did nothing more than tell the jury how the money would be distributed. That is true. Defendant argues, however, that the instruction improperly allowed the jury to consider the award of attorney fees in its deliberation on punitive damages. We agree with defendant. To instruct the jury how its award will be distributed injects into its deliberation factors that are not proper considerations in deciding whether to award punitive damages and, if they are awarded, the amount.

Before the passage of ORS 18.540, punitive damages were not an offset against litigation expenses. *State ex rel Young v. Crookham,* 290 Or 61, 65, 618 P2d 1268 (1980). On its face, the statute changed that principle by dictating that punitive damages be used to defray the cost of attorney fees.[3] However, the change in how an award of punitive damages should be distributed did not make the legislative goals of reducing litigation expenses and funding the Criminal Injuries Compensation Account relevant to whether punitive damages should be awarded or how large they should be.

The rationale for allowing punitive damages is to punish the offender and to deter others from similar conduct. *Roshak v. Leathers,* 277 Or 207, 560 P2d 275 (1977). The instruction here shifted the jury's consideration from whether an award against defendant would accomplish those ends to how much of the award plaintiff would be forced to share. That is an improper consideration in the assessment of punitive damages. As the Supreme Court noted in *State ex rel Young v. Crookham, supra,* 290 Or at 71-72:

> "The issue in determining punitive damages is not who will share what with whom, but the sufficiency of the deterrent effect of punitive damages on the defendant. *Roshak v. Leathers, [supra]; Noe v. Kaiser Foundation Hospitals,* 248 Or 420, 435 P2d 306 (1967). The finder of fact must determine what punitive damages, if any, to award based on the proper premise of deterring future similar misconduct by the defendant or others. To this end, a number of factors may be relevant, including the seriousness of the hazard to the public, the attitude and conduct of the wrongdoer upon learning of the

---

[2] Or Laws 1987, ch 774.

[3] Out-of-pocket costs were to be included in the amount paid to the attorney. *See* Minutes, Senate Judiciary Committee March 23, 1987, p 2.

hazard, the number and position of employees involved in causing or covering up the misconduct, the duration of the misconduct and/or its cover-up, the financial condition of the wrongdoer, and prior and potential punishment from similarly situated plaintiffs or other sources."

The Tort Reform Act grew out of concern about the cost of insurance and a desire to control those costs, partly through controlling the cost of litigation.[4] That purpose is not accomplished by permitting a jury to consider as a part of its deliberations on punitive damages that a plaintiff should receive a certain amount of money and, in order to ensure that he does, to add additional amounts to pay for attorney fees and contributions to the Criminal Injuries Compensation Account. The trial court erred in giving the instruction.[5]

Reversed and remanded.

---

[4] Neither the parties nor we have found any legislative history that shows that the legislature discussed whether or not a jury should be aware of the distribution.

[5] In defendant's second assignment of error, it challenges the trial court's award of attorney fees pursuant to ORS 646.638 in addition to the judgment for punitive damages to be distributed in accordance with ORS 18.540. Because of our disposition of the case, we do not reach the issue of whether the statutes, in effect, permit a double recovery for attorney fees.