*254 JUSTICE LEAPHART
dissents.
¶51 I concur with the Court’s resolution of Issue 1 and 2 and with the second cross-appeal issue. I dissent as to the first issue on cross-appeal: “Whether the District Court erred when it allowed the jury to be advised that the Finstads would be the recipients of the punitive damage award?”
¶52 In Tillett v. Lippert (1996), 275 Mont. 1, 909 P.2d 1158, we held that under Montana statute, § 27-1-220, MCA, punitive damages serve two purposes: (1) to set an example, and (2) to punish the wrongdoer.
The decisions of this Court further support the conclusion that punitive damages serve not only to punish, but also to set an example to the public for purposes of deterrence. Punitive damages should not be in excess of the “amount necessary adequately to punish the defendant and serve as an example to it and others.”
Tillett, 275 Mont. at 8, 909 P.2d at 1162 (citations omitted). Clearly the focus of a punitive damage award should be on punishing the wrongdoer and setting an example. Nothing in the statute or in the rationale for assessing punitive damages would suggest that the identity of the recipient is a relevant consideration.
¶53 Naming the recipient of the punitive damage award serves no purpose other than to influence the jury in arriving at an appropriate figure. This information can work to the detriment of the defense or the plaintiff depending upon the statutory scheme at issue. In states where all or part of the punitive damage award goes to a public fund, courts have held that informing the jury of this fact is improper since it tends to inflate the award. In Ford v. Uniroyal Goodrich Tire Co. (Ga. 1996), 476 S.E.2d 565, the Georgia Supreme Court held that an instruction advising the jury that seventy-five percent of the punitive damage award would go to the state’s treasury was improper.
As the statute repeatedly states, the purpose of punitive damages is to punish and deter the defendant, not to compensate the victim.... Given the unquestioned purpose of the punitive damages statute, the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct. Therefore, it is irrelevant who will be compensated by the award or how much the plaintiff will ultimately receive. By instructing the jury on the statutory scheme for allocating a punitive damages award, the trial court improperly shifted the jury’s focus from the critical *255 question of the defendant’s conduct to the inappropriate question of the plaintiffs compensation.
Ford, 476 S.E.2d at 570.
¶54 On a related issue, the Fifth Circuit Court of Appeals held that it was error to instruct the jury that damages in a civil antitrust case could be trebled. Instructing the jury as to the multiplier effect would thwart the purpose of treble damages, which is to deter violations and encourage private enforcement of the antitrust laws. The likely result of such an instruction is that “juries will adjust the damage award downward or find no liability, therefore thwarting Congress’s purpose, because of some notions of a windfall to the plaintiff.” Pollack & Riley, Inc. v. Pearl Brewing Co. (1974), 498 F.2d 1240 at 1243. Although the Pollack & Riley decision does not involve the naming of the recipient, it underscores how irrelevant factors tend to shift the jury’s attention away from considerations of punishment and towards adjusting damages or avoiding windfalls.
¶55 In Honeywell v. Sterling Furniture Co. (Or. 1990), 797 P.2d 1019, the Oregon Supreme Court held that it was reversible error to instruct the jury that a portion of any punitive damage award will be used to pay the plaintiff’s attorney or to contribute to a worthy cause. The court further concluded that such an instruction does nothing to further or even to inform the jury as to the proper goals of punitive damage awards. Concluding that such an instruction distracts the jury from the appropriate line of analysis, the court stated:
We agree with the Court of Appeals that the potential effect of the instruction was to “[permit] a jury to consider as a part of its deliberations on punitive damages that a plaintiff should receive a certain amount of money and, in order to ensure that he does, to add additional amounts to pay the attorney fees and contributions to the Criminal Injuries Compensation Account.” We also think there is another, perhaps even more serious problem with the instruction: It encouraged the jury to award punitive damages for a purpose, enhancement of the Criminal Injuries Compensation Account, that is not a reason for awarding punitive damages under Oregon law. So construed, the instruction was erroneous.
Offering a jury an additional, inappropriate basis for awarding punitive damages harmed the defendant.
Honeywell, 797 P.2d at 1022 (citation omitted).
*256 ¶56 As the above authorities illustrate, advising the jury as to how or to whom a punitive damage award is to be distributed will, depending upon the case, sometimes work to the benefit of the plaintiff and other times to the benefit of the defendant. Under no circumstances, however, does such information have any probative value and it invariably interjects irrelevant considerations into the jury’s deliberations thereby prejudicing one side or the other.
¶57 In Montana, where a punitive damage award inures to the benefit of the plaintiff, instructing the jury as to the identity of the recipient does not advance the goals of punishment; rather it impermissibly invites the jury to consider whether a plaintiff should enjoy a windfall in addition to whatever compensatory damages were awarded. I would hold that the District Court erred in failing to instruct the jury that it should not consider to whom the punitive damage award would be paid.
JUSTICE NELSON joins in the foregoing dissent.